UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALLISON KATHLEEN AYTES,

        *Plaintiff,*

    v.

MARTIN J. GRUENBERG, Chairman,
Federal Deposit Insurance Corporation,

        *Defendant.*

Civil Action No. 23-0911 (CJN)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

**RECEIVED**

AUG 21 2023

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................................ 2

INTRODUCTION ................................................................................................................. 2

ARGUMENT ........................................................................................................................ 3

    I.    References to the ADA are Made in Light of the Rehabilitation Act. ................................ 3

    II.    Plaintiff Has Timely and Properly Exhausted Administrative Remedies........................ 4

    III.    The Amended Complaint States a Claim of Discrimination. ........................................... 6

    IV.    The Amended Complaint States a Claim of Retaliation. ................................................. 8

    V.    Plaintiff Has Alleged Sufficient Facts to Establish a Harassment Claim........................11

CONCLUSION .................................................................................................................... 12

## INTRODUCTION

PLAINTIFF, ALLISON KATHLEEN AYTES ("Plaintiff") submits this Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss and Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss.

Defendant has moved that this honorable court dismiss Plaintiff's amended complaint, stating,

    (1) Plaintiff's ADA Claims Fail as A Matter of Law; and

    (2) Plaintiff Failed to Properly and Timely Exhaust Administrative Remedies; and

    (3) The Amended Complaint Fails to State a Claim of Discrimination; and

    (4) The Amended Complaint Fails to State a Claim of Retaliation; and

    (5) Plaintiff Has Not Alleged Sufficient Facts to Establish a Hostile Work Environment.

Plaintiff renews her statement of facts and claims against Defendant presented in the Amended Complaint, and opposes each of the propositions put forth by Defendant in support of his Motion to Dismiss, stating,

    (1)  References to the ADA are Made in Light of the Rehabilitation Act; and

    (2)  Plaintiff Has Timely and Properly Exhausted Administrative Remedies; and

    (3)  The Amended Complaint States a Claim of Discrimination; and

    (4)  The Amended Complaint States a Claim of Retaliation; and

    (5)  Plaintiff Has Alleged Sufficient Facts to Establish a Harassment Claim.

Accordingly, and for the reasons stated herein, defendant's motion should be denied.

## ARGUMENT

### I.     References to the ADA are Made in Light of the Rehabilitation Act.

Defendant plainly misunderstands Plaintiff's assertion of standing, assuming it is derived from the ADA alone and thus fails due to the ADA's inapplicability with regard to federal employees. However, this assumption is a clear misunderstanding of Plaintiff's legitimate assertion of standing, which stems from the Rehabilitation Act. Plaintiff has standing under Sections 504 and 508 of the Rehabilitation Act. Section 504(d) of the Rehabilitation Act states "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201– 12204 and 12210), as such sections relate to employment." 29 U.S.C. § 794(d). The D.C. Circuit Court of Appeals has interpreted the Rehabilitation Act in the same manner as Plaintiff, stating "The Act expressly incorporates the standards applied under the Americans with Disabilities Act (ADA)." *Ward v.*

*McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014). Simply put, Plaintiff's references to the ADA are not assertions that claims arise thereunder. Rather, such references are made only insofar as the relevant sections of the ADA are incorporated into the Rehabilitation Act by reference.

## II.      **Plaintiff Has Timely and Properly Exhausted Administrative Remedies.**

Plaintiff's claim should not be dismissed for failure to properly and timely exhaust administrative remedies. Defendant puts forth three contentions on this point. First, Defendant asks the court to dismiss all claims of discrimination that occurred prior to November 7, 2014, since that is the date 45 days prior to Plaintiff's initial contact with the EEO counselor on December 22, 2014. *See* Def.'s Mot. at 6–9 (ECF No. 29). Second, Defendant asks the court to dismiss Plaintiff's constructive discharge claim on the grounds that Plaintiff did not raise such complaint until filing with the District Court. *See* Def.'s Mot. at 9 (ECF No. 29). Finally, Defendant asks the court to dismiss Plaintiff's suit in its entirety on the grounds that Plaintiff filed such complaint one singular day later than the deadline of ninety days after receipt of the EEOC's final decision. *See* Def.'s Mot. at 10 (ECF No. 29).

Defendant first asks the court to dismiss all of Plaintiff's claims of discrimination that occurred prior to November 7, 2014, arguing that such claims are forbidden based upon the 45-day rule. However, the 45-day time limit set forth in 29 C.F.R. § 1614.105(a)(1) may be extended if an employee satisfies one of the criteria for extension set forth in 29 C.F.R. § 1614.105(a)(2). Those criteria are (1) "she was not notified of the time limits and was not otherwise aware of them," (2) "she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred," (3) "despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits," or (4) "for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. §

1614.105(a)(2). In this circumstance, Plaintiff meets the first requirement. Plaintiff was obviously unaware of the 45-day time limit, and was first presented with the option of an EEO complaint upon the suggestion made by Mr. Murton in March of 2015. Accordingly, 45-day limitation should be tolled, just as this court has done when other plaintiffs have satisfied other criteria. *See e.g., Hutchinson v. Holder*, 668 F. Supp. 2d 201, 213–214 (D.D.C. 2009).

Defendant asks the court to dismiss Plaintiff's constructive discharge claim on the grounds that Plaintiff did not raise such complaint until filing with the District Court. However, Plaintiff did effectively raise her constructive discharge claim in her original EEO complaint, stating, "Ms. Aytes became aware from several colleagues Ms. Luk is "trying to fire" Ms. Aytes, and "the harassment is going to continue until termination…" *See* Ex. B (Formal EEO Complaint at 4) (ECF No. 29-2). This is clearly analogous to the circumstances present in another case, in which the D.C. Circuit Court of Appeals reversed the District Court's dismissal of a Plaintiff's retaliation claim for failure to exhaust administrative remedies. In reversing, the court held "Because Coleman expressly raised the non-promotion retaliation claim in his equal employment opportunity complaint, we reverse." *Coleman v. Duke*, 867 F.3d 204 (D.C. Cir. 2017). Accordingly, the court ought not dismiss Plaintiff's constructive discharge claim because it was raised in her EEO complaint.

Defendant's argument requesting complete dismissal is easily refuted by a simple examination of facts already in the record of this case. Plaintiff's initial complaint was delivered to the U.S. District Court for the Northern District of Oklahoma by mail. *See* Compl. at 1 (ECF No. 1). Plaintiff signed the initial complaint on March 1, 2021, a full day before the March 2 deadline. *See* Compl. at 6 (ECF No. 1). The U.S. Postal Service ("USPS") accepted Plaintiff's complaint for shipping on March 1, 2021, and noted an anticipated delivery date of March 2, 2021.

*See* Compl. at 7 (ECF No. 1). Had the USPS fulfilled this anticipated delivery date, Plaintiff would not have to fend off such a specious argument. However, it is solely because the USPS missed their delivery date by a single day that Plaintiff now finds herself in this position; it is through no fault of her own. Plaintiff did not have access to electronic filing until after the approval of her Motion to Submit Files to the Court Electronically Using the Case Management/Electronic Case Files (CM/ECF) System. *See* ECF No. 7. Because Plaintiff made reasonable efforts to ensure her case was filed at the proper time, she ought not be penalized for the actions (or apparent lack thereof) on the part of the Postal Service.

III.   **The Amended Complaint States a Claim of Discrimination.**

In his contention that Plaintiff has failed to state a claim of discrimination, Defendant fails to see the forest for the trees. Defendant dedicates substantial space to arguments concerning the minutiae of the telework agreement. *See* Def.'s Mot. at 12–14 (ECF No. 29). However, Defendant's contention is easily defeated by simply examining Plaintiff's discrimination claim within the larger context presented in the Amended Complaint.

To state a claim for a violation of the Rehabilitation Act's reasonable accommodation requirements, a plaintiff must allege that "(i) she was disabled within the meaning of the Rehabilitation Act; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Menoken v. Dhillon*, 975 F.3d 1, 7 (D.C. Cir. 2020).

Plaintiff made sufficient allegations of the existence of her disability. *See* Am. Compl. at 5–8 (ECF No. 15). Plaintiff made sufficient allegations that she was able to perform the essential functions of her job with or without reasonable accommodation. *See* Am. Compl. at 8–9 (ECF No.

15). Defendant only appears to dispute whether Plaintiff sufficiently alleged that her employer had notice of her disability and whether the employer denied her request for reasonable accommodation. Plaintiff clearly made sufficient allegations to fulfill both of these requirements.

Federal appellate courts have recognized that the existence of an informal accommodation arrangement is evidence that an employer had notice of the employee's disability. *See, e.g., Verhoff v. Time Warner Cable, Inc.*, 299 F.App'x 488, 496 (6th Cir. 2008) (finding that an employer's informal accommodation of an employee's chronic illness strongly supported employee's demonstration of sufficient notice to establish prima facie case for FMLA interference). Though not binding on this court, this is nonetheless convincing.

This is strikingly similar to Plaintiff's circumstances. Plaintiff clearly alleged that her employer, the Federal Deposit Insurance Corporation ("FDIC"), became aware of her documented disability in 2010, and that her supervisors verbally approved informal telework accommodations for her disabilities. *See* Am. Compl. at 7 (ECF No. 15). This informal arrangement alone is strong evidence that Defendant had sufficient notice of Plaintiff's disability, and its subsequent formalization ought to weigh even more heavily in Plaintiff's favor. In January of 2013, following a change in supervisors, Plaintiff sought to formalize the previously informal arrangement of accommodations through the formal written medical telework agreement. *See* Am. Compl. at 7 (ECF No. 15). Taken in the larger context of simply formalizing a previously informal accommodation arrangement, it is abundantly clear that Plaintiff's telework request and the resulting agreement ought to be understood as a formal restatement of her previous request for accommodation and approval thereof.

Plaintiff also made sufficient allegations that her employer denied her request for reasonable accommodation for her disability. When the telework agreement and the previous

informal accommodation arrangement are properly understood as being connected to her specified disabilities, it is plainly self-evident that Plaintiff's allegations of revocation thereof are sufficient to demonstrate a prima facie case for discrimination by failing to accommodate.

## IV.   **The Amended Complaint States a Claim of Retaliation.**

Plaintiff sufficiently states a claim of retaliation. For a litigant to state a prima facie case of retaliation, she must show that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) that a causal link connects the two. *Gray v. Foxx*, 637 F.App'x 603, 607 (D.C. Cir. 2015). Defendant does not dispute that Plaintiff has sufficiently demonstrated the first two prongs of this test, only arguing that Plaintiff has failed to demonstrate a causal link. *See* Def.'s Mot. at 14 – 15 (ECF No. 29). The D.C. Circuit has long held that "a close temporal relationship may *alone* establish the required causal connection." *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003) (emphasis added) (citing *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir 2000), *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985), and *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1254–1255 (10th Cir. 2001)).

Defendant attempts to downplay Plaintiff's clearly inferable temporal proximity assertion through rhetorical hand-waving, calling it "borderline," while failing to apply any of his cited precedent to the facts of the instant matter. *See* Def.'s Mot. at 14–15 (ECF No. 29). Plaintiff's temporal proximity claim is anything other than "borderline," demonstrated as follows.

With regard to Plaintiff's Non-selection allegation, as alleged, the non-selection occurred in March 2014, the same month that Plaintiff initiated a formal union grievance, one month following Plaintiff expressing her belief that she had been the subject of discrimination to the Director of Administration, and two months following Plaintiff expressing the same belief to the Internal Ombudsman. *See* Am. Compl. at 15–16 (ECF No. 15). Altogether, several of Plaintiff's

2014 reports of discrimination occurred over a short period of time, namely, from January 21, 2014 to March 13, 2014, with the retaliatory non-selection occurring in the same month as the initiation of the union grievance process. Surely this is sufficiently temporally proximate for the court to infer retaliation.

With regard to Plaintiff's allegation that she was denied job benefits, as alleged, one instance of this retaliation occurred on February 3, 2014. *See* Am. Compl. at 16 (ECF No. 15). This was precisely 13 calendar days after Plaintiff expressed that she believed she had been the subject of discrimination to the Internal Ombudsman. *See* Am. Compl. at 15 (ECF No. 15). Once again, surely this is sufficiently temporally proximate for the court to infer retaliation.

With regard to Plaintiff's allegation of demotion, as alleged, this retaliation was a persistent occurrence beginning in February 2014 and running through September 2015. *See* Am. Compl. at 16–17 (ECF No. 15). Similar to the previous allegations, persistent retaliation intended to demote Plaintiff from her previous responsibilities began within a month after Plaintiff expressed that she believed she had been the subject of discrimination to the Internal Ombudsman, and within the same month as Plaintiff expressing the same complaint to the Director of Administration. *See* Am. Compl. at 15–17 (ECF No. 15). Once again, surely this is sufficiently temporally proximate for the court to infer retaliation.

With regard to Plaintiff's allegation of suspension, as alleged, this retaliation occurred on March 2, 2015. *See* Am. Compl. at 17 (ECF No. 15). This was within a month after Plaintiff expressed to Office of Complex Financial Institutions ("OCFI") Deputy Director Bill Murden that she believed she had been the subject of discrimination. *See* Am. Compl. at 15–17 (ECF No. 15). Once again, surely this is sufficiently temporally proximate for the court to infer retaliation.

With regard to Plaintiff's allegation of reprimands and negative evaluations, as alleged, this retaliation occurred on November 20, 2014 and June 23, 2015. *See* Am. Compl. at 17–18 (ECF No. 15). Both instances occurred within the February 2014 – July 2015 timeframe during which Plaintiff made numerous reports to her Union Representative that she believed she had been the subject of discrimination. *See* Am. Compl. at 15–18 (ECF No. 15). Both instances occurred within the April 2014 – September 2015 timeframe during which Plaintiff made numerous substantively identical reports to OCFI Associate Deputy Director Angus Tarpley. *See* Am. Compl. at 15–18 (ECF No. 15). Once again, surely this is sufficiently temporally proximate for the court to infer retaliation.

With regard to Plaintiff's allegation of discharge or constructive termination, as alleged, this retaliation culminated in Plaintiff's resignation on September 16, 2015. *See* Am. Compl. at 18 (ECF No. 15). Plaintiff clearly alleged that this was not merely a discrete instance of a retaliatory act, but rather the culmination of "a long train of abuses." Decl. of Indep. (1776). Nonetheless, the discrete instance of Plaintiff's resignation occurred within the same month as Plaintiff's final reports to Mr. Tarpley that she believed she had been the subject of discrimination. *See* Am. Compl. at 15–18 (ECF No. 15). Once again, surely this is sufficiently temporally proximate for the court to infer retaliation.

With regard to Plaintiff's allegation of harassment, as alleged, this retaliation occurred numerous times following Plaintiff's various reports to a multitude of authorities that she believed she had been the subject of discrimination. *See* Am. Compl. at 18–19 (ECF No. 15). Once again, surely this is sufficiently temporally proximate for the court to infer retaliation.

With regard to Plaintiff's allegation that the now vacated criminal prosecution against her was an act of retaliation, temporal proximity is again easily established. The prosecution against

Plaintiff was effectively initiated by Ms. Luk's report to the FDIC Office of Inspector General made on September 19, 2015. *See* Am. Compl. at 19 (ECF No. 15). This instance of retaliation occurred within the same calendar month as Plaintiff's final reports to Mr. Tarpley that she believed she had been the subject of discrimination. Taken within the larger context of the circumstances, it is abundantly clear that when Ms. Luk took the actions that led to criminal prosecution against Plaintiff, it was the final act of a lengthy, dramatic production intended to harm Plaintiff, in part in retaliation for Plaintiff's refusal to accept discrimination. Altogether, sure this is sufficiently temporally proximate for the court to infer retaliation.

Thus, in each specific alleged instance of retaliation, Plaintiff has demonstrated a sufficient causal link between her protected activity and the material harm caused by her employer. Because Defendant has only raised an objection as to the "causal link" prong of the test set forth in *Gray*, and Plaintiff has sufficiently addressed this objection, Plaintiff has sufficiently stated a prima facie case of retaliation. As such, the burden now ought to shift to the employer "to produce a legitimate, non-discriminatory reason for its action." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).

## V.   Plaintiff Has Alleged Sufficient Facts to Establish a Harassment Claim.

Defendant puts forth several contentions against Plaintiff's Harassment claim. These contentions are entirely ignorant of Plaintiff's valid Harassment claim, articulated sufficiently within the Amended Complaint. *See* Am. Compl. at 20–26 (ECF No 15). In light of this, Plaintiff simply reiterates her allegations of facts in support of her harassment claim, and notes that the facts alleged are more than sufficient to survive a motion to dismiss.

In *Scott v. District Hospital Partners, LP.*, the court held that "while lacking in detail," Scott's allegations were "sufficient to satisfy" her burden at the motion to dismiss stage. *Scott v. District Hospital Partners, LP.*, 60 F.Supp.3d 156, 164–165 (D.D.C. 2014). In that case, the

plaintiff alleged that her immediate supervisor discriminatorily revoked her overtime privileges, along with repeatedly subjecting her to degrading comments. *Id.*

Here, Plaintiff has clearly gone beyond the same threshold barely met by Scott in the above-mentioned case. Plaintiff clearly alleges that she was subjected to a pattern of degrading comments from her supervisor, made in front of her colleagues. *See* Am. Compl. at 20 – 26 (ECF No. 15). Plaintiff further alleges that her supervisor's actions had the intentional effect of damaging Plaintiff's reputation and credibility, that her supervisor intentionally and discriminatorily impeded Plaintiff's move to a new office, that her supervisor unreasonably and discriminatorily denied Plaintiff's request for telework, while approving those of all other employees, and that her supervisor unreasonably and discriminatorily audited Plaintiff's time and travel expense reports, presumably in search of a pretext for termination. *Id.* If Scott's significantly less detailed allegations were sufficient for this honorable court to allow her similar claims to proceed, surely Plaintiff's allegations in this instance must be sufficient.

## CONCLUSION

For the above stated reasons, the court should deny defendant's motion to dismiss Plaintiff's amended complaint.

Date of Signing:  8 | 21 | 23

Signature of Plaintiff
Printed Name of Plaintiff            Allison Kathleen Aytes
3323 W. Houston Place
Broken Arrow, OK 74012
(214) 799-6089

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALLISON KATHLEEN AYTES,

*Plaintiff,*

v.

MARTIN J. GRUENBERG, Chairman,
Federal Deposit Insurance Corporation,

*Defendant.*

Civil Action No. 23-0911 (CJN)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's Motion to Dismiss, Plaintiff's Opposition thereto, and the entire record herein, it is hereby

ORDERED that the Defendant's Motion is DENIED.


SO ORDERED:


Dated this ____ day of _____, 2023

_____
CARL J. NICHOLS
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on August ⟨21⟩, 2023, I filed the foregoing with the Clerk of the Court

and mailed a copy to the defendant:

STEPHANIE R. JOHNSON, Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530

Allison K. Aytes, Plaintiff