UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALLISON KATHLEEN AYTES,

                  Plaintiff,

          v.

MARTIN J. GRUENBERG, Chairman,
Federal Deposit Insurance Corporation,

                  Defendant.

Civil Action No. 23-0911 (CJN)

**DEFENDANT'S REPLY IN SUPPORT OF**
**<u>MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT .................................................................................................................... 1

    I.       Plaintiff's Amended Complaint is Time-Barred................................................ 1

    II.     Plaintiff Failed to Exhaust Her Administrative Remedies for Some of Her Claims........ 3

    III.   The Amended Complaint Fails to State a Discrimination Claim under Rehabilitation Act. ................................................................................................. 6

    IV.   The Amended Complaint Fails to State a Retaliation Claim under the Rehabilitation Act. ........................................................................................... 8

    V.    Plaintiff Fails to Sufficiently Plead Facts to Establish a Hostile Work Environment Claim........................................................................................... 11

CONCLUSION.............................................................................................................. 13

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                                        <u>Page</u>

*Bassett v. Walsh*,
    Civ. A. No. 22-2408 (JEB), 2023 WL 4999176 (D.D.C. Aug. 4, 2023) ................................. 7

*Brooks v. Grundmann*,
    748 F.3d 1273 (D.C. Cir. 2014) ........................................................................... 12

*Clark Cty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) ........................................................................................ 10

*Coleman v. Duke*,
    867 F.3d 204 (D.C. Cir. 2017) .............................................................................. 5

*Culton v. Mo. Dep't of Corrs.*,
    515 F. 3d 828 (8th Cir. 2008) ......................................................................... 9-10

*Drewrey v. Clinton*,
    763 F. Supp. 2d 54 (D.D.C. 2011) ......................................................................... 6

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ........................................................................................ 12

*Foster v. Gonzales*,
    516 F. Supp. 2d 17 (D.D.C. 2007) ...................................................................... 4-5

*Fragola v. Kenific Grp., Inc.*,
    Civ. A. No. 21-1423 (RDM), 2022 WL 1908824 (D.D.C. June 3, 2022) ...................... 8-9, 9

*Garza v. Blinken*,
    Civ. A. No. 21-02770 (APM), 2023 WL 2239352 (D.D.C. Feb. 27, 2023) ........................ 12

*Grant v. Dep't of Treasury*,
    272 F. Supp. 3d 182 (D.D.C. 2017) ........................................................................ 3

*Hamilton v. Geithner*,
    666 F.3d 1344 (D.C. Cir. 2012) ...................................................................... 11, 9

*Harris v. Forklift Sys.*,
    510 U.S. 17 (1993) ..................................................................................... 11, 12

*Jones v. Bernanke*,
    557 F.3d 670 (D.C. Cir. 2009) ............................................................................. 9

*Jones v. Castro*,
    168 F. Supp. 3d 169 (D.D.C. 2016) ...................................................................... 10

*Kelso v. Perdue*,
    Civ. A. No. 19-3864 (ZMF), 2021 WL 3507683 (D.D.C. July 12, 2021) ........................... 8

*LaRochelle v. Lynott*,
   Civ. A. No. 22-0115 (TSC), 2023 WL 6215365 (D.D.C. Sept. 25, 2023) ............................. 7

*Miller v. Downtown Bid Servs. Corp.*,
   281 F. Supp. 3d 15 (D.D.C. 2017) ......................................................................................... 2

*Moore v. Castro*,
   192 F. Supp. 3d 18 (D.D.C. 2016) ....................................................................................... 10

*Rafi v. Sebelius*,
   377 F. App'x. 24 (D.C. Cir. 2010) ......................................................................................... 6

*Robb v. Vilsack*,
   Civ. A. No. 20-0929, 2021 WL 3036796 (D.D.C. July 19, 2021) .......................................... 5

*Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*,
   71 F.4th 51 (D.C. Cir. 2023) ............................................................................................ 2, 3

*Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*,
   No. 22-5093, 2023 WL 4036253 (D.C. Cir. June 16, 2023) .................................................. 3

*Ross v. Georgetown Univ.*,
   No. 18-671 (ABJ), 2019 WL 2452326 (D.D.C. June 12, 2019) ............................................ 11

*Scott v. Dist. Hosp. Partners, LP.*,
   60 F. Supp. 3d 156 (D.D.C. 2014) ....................................................................................... 11

*Slate v. Pub. Def. Serv. for D.C.*,
   31 F. Supp. 3d 277 (D.D.C. 2014) ......................................................................................... 5

*Smith v. Dalton*,
   971 F. Supp. 1 (D.D.C. 1997) ........................................................................................... 3, 4

*Stewart v. Evans*,
   275 F.3d 1126 (D.C. Cir. 2002) ........................................................................................... 12

*Taylor v. Haalan,,*
   Civ. A. No. 20-3173 (DLF), 2022 WL 990682 (D.D.C. Mar. 31, 2022) ................................. 8

*Waggel v. George Wash. Univ.*,
   957 F.3d 1364 (D.C. Cir. 2020) ............................................................................................. 7

*Williams v. Spencer*,
   883 F. Supp. 2d 165 (D.D.C. 2012) ..................................................................................... 10

*Woodruff v. Peters*,
   482 F.3d 521 (D.C. Cir. 2007) ............................................................................................... 3

*Young v. SEC*,
   956 F.3d 650 (D.C. Cir. 2020) ............................................................................................... 2

Defendant Martin J. Gruenberg, in his official capacity as Chairman of the Federal Deposit Insurance Corporation ("Defendant" or "Agency"), respectfully submits this reply in support of his motion to dismiss (ECF No. 29) and in response to the opposition filed by Plaintiff Allison Kathleen Aytes ("Plaintiff") (ECF No. 31) .

Plaintiff, a former employee of the Agency and proceeding *pro se*, brings this lawsuit alleging disability discrimination, retaliation, and hostile work environment in violation of the Americans with Disability Act ("ADA") and the Rehabilitation Act.  As a preliminary matter, Plaintiff concedes that that the ADA is inapplicable, and the Court should thus dismiss any claims brought under the ADA.  *See* Pl.'s Opp'n at 3-4 (ECF No. 31).  Also, as explained in Defendant's Motion, Plaintiff's lawsuit should be dismissed as time-barred.  Even if timely, the Court should dismiss Plaintiff's Amended Complaint because  (1) Plaintiff failed to timely and properly exhaust her administrative remedies for some of her claims; (2) Plaintiff fails to sufficiently plead facts to support her discrimination and retaliation claims; and (3) Plaintiff fails to state a claim for a hostile work environment.  As discussed more fully below, Plaintiff's Opposition provides no basis to conclude otherwise and thus Defendant's Motion should be granted.

## ARGUMENT

### I.    Plaintiff's Amended Complaint is Time-Barred.

Defendant's opening brief demonstrated that Plaintiff's lawsuit is time-barred because she filed her original Complaint beyond the 90-day time limit.  Plaintiff admitted that she received the right to sue notice on December 2, 2020 (Am. Compl. at 1 (ECF No. 15)), and thus Plaintiff was required to file this action in federal court within 90 days, on or before March 2, 2021.  Def.'s Mot. at 10.  Plaintiff did not file this suit until March 3, 2021, a fact Plaintiff does not deny.  *See* Pl.'s Opp. at 5-6 (ECF No. 31).  Plaintiff also does not dispute that the docket in this case reflects that

the case was filed on March 3, 2021. *Id.* Plaintiff instead insists that her case should not be dismissed because the U.S. Postal Service failed to timely deliver her initial Complaint timely, and she did not have access to electronic filing. *Id.* Assuming Plaintiff is seeking equitable tolling, Plaintiff's excuses do not meet the high bar for equitable tolling.

"Courts apply equitable tolling sparingly…and only in extraordinary and carefully circumscribed instances." *Miller v. Downtown Bid Servs. Corp.*, 281 F. Supp. 3d 15, 20 (D.D.C. 2017) (internal quotation marks and citations omitted). A party seeking equitable tolling must show: "(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way." *Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 58 (D.C. Cir. 2023). "When a deadline is missed as a result of a 'garden variety claim of excusable neglect' or a 'simple miscalculation,' equitable tolling is not justified." *Id.* (quoting *Holland v. Fla.*, 560 U.S. 631, 651 (2010)). "The party arguing for equitable tolling bears the burden of demonstrating entitlement to it." *Young v. SEC*, 956 F.3d 650, 655 (D.C. Cir. 2020).

Here, rather than emailing or filing her initial Complaint in person,[1] Plaintiff elected to mail her Complaint to the court only one day before the ninety-day deadline. *See* Pl.'s Opp. at 5. This Court has recognized when a plaintiff chooses to mail their complaint, the plaintiff "assume[s] the risk [their] complaint [will] arrive late." *Robinson*, 71 F.4th at 59 (quoting *Houston v. Lack*, 487 U.S. 266, 275 (1988) ("[A] civil litigant who *chooses* to mail a notice of appeal assumes the

---

[1]     Plaintiff initially filed her lawsuit in the District Court for the Northern District of Oklahoma before that court transferred the case to this District. *See* ECF No. 23. On the website for the District Court for Northern District of Oklahoma, the court where Plaintiff initially filed her Complaint, there are guidelines and instructions for *pro se* plaintiffs, including information concerning pro se email filings with the Court. *See* Filing Without an Attorney, https://www.oknd.uscourts.gov/filing-without-attorney, which links to https://www.oknd.uscourts.gov/sites/default/files/Pro_Se_Email_Filing.pdf containing detailed instructions for pro se filers.

risk of untimely delivery and filing") (emphasis in original)).  The "decision to use standard mail is a garden variety claim of excusable neglect insufficient to warrant equitable tolling, *see Robinson*, 71 F.4th at 59 (internal quotation mark omitted).

"This Circuit requires strict adherence to the [ninety]–day requirement[,] " *Grant v. Dep't of Treasury*, 272 F. Supp. 3d 182, 189 (D.D.C. 2017) (citations and internal quotations omitted), and because Plaintiff filed this action one day too late and fails to provide any explanation that could support an argument for equitable tolling,  the Court should dismiss this action in its entirety. *See Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007) ("Courts apply [the ninety–day] limit strictly and 'will dismiss a suit for missing the deadline by even one day.'"); *see also, e.g., Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, No. 22-5093, 2023 WL 4036253, at *5-6 (D.C. Cir. June 16, 2023) (the D.C. Circuit affirmed the District Court's decision to dismiss the plaintiff's case after he filed his complaint one-day late and failed to demonstrate that he was entitled to equitable tolling); *Smith v. Dalton*, 971 F. Supp. 1, 3 (D.D.C. 1997) (dismissing Title VII complaint filed one day late).

## II.    Plaintiff Failed to Exhaust Her Administrative Remedies for Some of Her Claims.

Even if this action were timely filed, many of Plaintiff's claims are barred because she failed  to contact an Equal Employment Opportunity ("EEO") counselor within forty-five days of the alleged unlawful act.  Def.'s Mot. at 6-10.  As described in Defendant's Motion, the unexhausted allegations include:

- Claims arising from the revocation of the purported telework accommodation on December 10, 2013 (*id.* at 10);

- Claims arising from a demotion or removal from assignment responsibilities beginning in February 2014 through November 7, 2014 (*id.* at 11–12, 16–17);

- Claims arising from a non-selection in March 2014 (*id.* at 11–12);

3

- •      Claims arising from the denial to move to a larger office between December 2013 and March 2014 (*id.* at 24);

- •      Claims arising from unreasonable audits of time, travel, and expenses between March 30, 2014, and November 7, 2014 (*id.* at 25–26);

- •      Claims arising from a denial of request for sick pay on January 31, 2014;

- •      Claims arising from the denial of telework on January 21 and February 3, 2014 (*id.* at 16); and

- •      Claims arising from the Agency discharging or constructively terminating her on September 16, 2015  (*id.* at 18).

Plaintiff counters Defendant's exhaustion argument, maintaining that she (i) was unaware of the forty-five-day time limit and was first presented with the option of an EEO complaint in March 2015 and (ii) did constructively exhaust her constructive discharge claim.  *See* Pl.'s Opp. at 4-5 (ECF No. 31.  Each argument fails.

First, in terms of Plaintiff not knowing about the forty-five-day deadline or that she was unaware that she could file an EEO Complaint until March 2015, these arguments are unavailing and do not support equitable avoidance of the exhaustion requirement.  Subjective ignorance does not entitle Plaintiff to equitable tolling.  *See Foster v. Gonzales*, 516 F. Supp. 2d 17, 26 (D.D.C. 2007) ("[S]ubjective ignorance alone does not automatically entitle [the plaintiff] to the exception in 29 C.F.R. § 1614.105(a)(2)" (citing *Johnson v. Runyon*, 47 F.3d 911, 918 (7th Cir. 1995)). Equitable tolling has only been found in extraordinary and carefully circumscribed instances, "such as when (1) a claimant has received inadequate notice, (2) where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction, (3) where the court has led the plaintiff to believe that she had done everything required of her, or (4) where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon." *Bass v. Bair*, 514 F. Supp. 2d 96, 99 (D.D.C. 2007) (internal quotations

omitted).  None of those circumstances exist here.  Also, Plaintiff's claim that she was unaware that she could file an EEO Compliant until March 2015 is belied by the record.  Indeed, Plaintiff admits in her March 2015 Formal EEO Complaint that she contacted an EEO counselor on December 22, 2014.  *See* Def.'s Ex. A at 3 (ECF No. 29-1); *see also* Def.'s Ex. B at 000004 (ECF No. 29-2).[2]  This fact shows Plaintiff knew how to seek EEO counseling but failed to do so timely.

Second, for her constructive discharge claim, it is undisputed that Plaintiff failed to raise this claim at the administrative level and thus the claim should be dismissed.  *Compare* Am. Compl. at 18 (ECF No. 15) *with* Def.'s Exs. A-C.  Plaintiff contends, however, that she raised this allegation at the administrative stage when she alleged that she became aware on September 16, 2014,  from several colleagues that Ms. Alexandria Luk was trying to fire her.  *See* Pl.'s Opp. at 5 (ECF No. 15); *see also* Def.'s Ex. A at 2 (ECF No. 29-1).  For the sake of  argument, even if true, Plaintiff's constructive discharge claim still fails because Plaintiff alleges that she became aware that Ms. Luk was trying to fire her on September 16, 2014, which meant that she had forty-five days until October 29, 2014, to initiate an EEO claim. Plaintiff, however, waited for ninety-seven days before contacting an EEO counselor on December 22, 2014.  Therefore, even if true, her constructive discharge claim was not timely exhausted.

Next, Plaintiff's reliance on *Coleman v. Duke*, 867 F.3d 204 (D.C. Cir. 2017) to save her untimely constructive discharge claim is misplaced.  In *Coleman*, the Circuit Court determined that the plaintiff timely contacted an EEO counselor and filed his EEO Complaint.  *Id.* at 210-11. Unlike *Coleman*, as demonstrated above and in Defendant's opening brief, Plaintiff did not timely

---

[2]      The Court may consider public records, such as court decisions, *Slate v. Pub. Def. Serv. for D.C.*, 31 F. Supp. 3d 277, 287 (D.D.C. 2014), and "[i]n employment discrimination cases, courts may, and often do, take judicial notice of EEOC charges and EEOC decisions," *Robb v. Vilsack*, Civ. A. No. 20-0929, 2021 WL 3036796, at *5 (D.D.C. July 19, 2021).

(or properly) raise her constructive discharge claim at the administrative level.  Accordingly, the Court should dismiss Plaintiff's constructive discharge claim as untimely.  *See, e.g. Rafi v. Sebelius*, 377 F. App'x. 24, 25 (D.C. Cir. 2010) (affirming a district court's dismissal of Title VII and ADEA claims because the plaintiff had not initiated EEO contact within 45 days of the allegedly discriminatory hiring practice); *Drewrey v. Clinton*, 763 F. Supp. 2d 54, 62 (D.D.C. 2011) (granting the government summary judgment as to plaintiff's Title VII claims based on incidents that occurred more than 45 days before plaintiff initiated EEO counseling).

### III. The Amended Complaint Fails to State a Discrimination Claim under Rehabilitation Act.

Defendant's Motion shows that Plaintiff's discrimination claim fails as a matter of law. *See* Def.s Mot. at 11-14.  Plaintiff's Opposition, however, claims she plausibly plead  facts to demonstrate a failure-to-accommodate claim because she contends that the Agency was put on notice of her "disability" in 2010 when she had an informal telework accommodation and insists that the January 2013 Telework Agreement was simply a formalized agreement of her informal agreement in 2010.  *See* Pl.'s Opp. at 7-8.  Plaintiff also claims that the revocation of the January 2013 Telework Agreement was discriminatory for failure to reasonably accommodate her.  *Id.* at 8.  Plaintiff's contentions fail.

Plaintiff's discrimination claim involves the January 2013 Telework Agreement (Def.'s Ex. D, (ECF No. 29-4)), which is the Agency's standard telework agreement for all employees. As demonstrated in Defendant's Motion, Plaintiff failed to plausibly plead facts that the telework agreement was a reasonable accommodation for any of her disabilities or that the Agency revoked or refused any reasonable accommodation.  *See* Def.s' Mot. at 11-14. Although "[a]n employee's request for an accommodation does not need to be in writing or use the specific phrase 'reasonable accommodation,' [] the request must make sufficiently clear that the employee 'wants assistance

with…her disability so that…she may return, or continue, to work.'" *LaRochelle v. Lynott*, Civ. A. No. 22-0115 (TSC), 2023 WL 6215365, at *8 (D.D.C. Sept. 25, 2023) (citation omitted).

Here, the Amended Complaint and Opposition are devoid of any facts that Plaintiff affirmatively requested to telework as a form of reasonable accommodation for any of her alleged disabilities or that any of the medical documentation allegedly submitted to the Agency contained a request for an accommodation for any specific disability. Also, the Telework Agreement neither mentioned Plaintiff's purported disabilities nor contained any language indicating that it was a form of reasonable accommodation. *See* Def.'s Ex. D (ECF No. 29-4). Because Plaintiff never requested a reasonable accommodation, the Agency never denied any such request, revoked a reasonable accommodation, nor had the duty to engage in any interactive process.

Also, Plaintiff asserts that her supervisors were generally aware of any of her disabilities and argues that this awareness satisfies the request for reasonable accommodation requirement under the Rehabilitation Act. *See* Pl.'s Opp.at 6-8. Plaintiff's argument is simply inconsistent with the law. Mere "[n]otice of a disability does not ordinarily satisfy the . . . request requirement, which performs the independent function of informing an employer of the . . . accommodation needed to remedy those limitations," *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1372 (D.C. Cir. 2020), and this is so even if the Agency previously approved plaintiff for a different accommodation. *Bassett v. Walsh*, Civ. A. No. 22-2408 (JEB), 2023 WL 4999176, at *6 (D.D.C. Aug. 4, 2023). Indeed, a rule to the contrary would require employers to have prescient responsibility to anticipate any and every possible reasonable accommodation that a qualified disabled employee might need, even when that employee does not ever express a need for one. *See Waggel*, 957 F.3d at 1372.

7

Accordingly, because Plaintiff fails to allege that she requested to telework as a form of reasonable accommodation for her disabilities and the Agency's notice of her disabilities alone does not make up for the otherwise missing request for a reasonable accommodation, the Court should dismiss Plaintiff's failure-to-accommodate claim. *See Taylor v. Haaland*, Civ. A. No. 20-3173 (DLF), 2022 WL 990682, at *5 (D.D.C. Mar. 31, 2022) (dismissing failure-to-accommodate claims where Plaintiff fails to allege she made a reasonable accommodation request); *Kelso v. Perdue*, Civ. A. No. 19-3864 (ZMF), 2021 WL 3507683, at *9 (D.D.C. July 12, 2021) (dismissing failure-to-accommodate claim where no allegation that plaintiff "told Defendant that her request was related to her disability").

## IV.    The Amended Complaint Fails to State a Retaliation Claim under the Rehabilitation Act.

As an initial matter, a majority of the claims relied upon to support Plaintiff's retaliation claim are unexhausted (i.e, all claims that occurred before November 7, 2014, and the constructive discharge claim). Even if they were exhausted, Plaintiff's retaliation claim fails as a matter of law because Plaintiff fails to sufficiently plead facts to suggest that she suffered a materially adverse action because of her protected activity. Plaintiff disagrees. *See* Pl.'s Opp. at 8-11. Specifically, Plaintiff argues that she plead enough facts to show a causal connection between the purported adverse actions and her protected activity to allow the Court to infer retaliation. *See id.* Plaintiff is wrong.

As demonstrated in Defendant's Motion, Plaintiff fails to meet the minimal pleading standards to establish causation. In the absence of direct evidence, a plaintiff may establish causation by showing "that the employer had knowledge of the employee's protected activity and that the [retaliatory] personnel action took place shortly after that activity." *Fragola v. Kenific Grp., Inc.*, Civ. A. No. 21-1423 (RDM), 2022 WL 1908824, at *8 (D.D.C. June 3, 2022) (citing

*Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000)). "'Temporal proximity' between a protected activity and a retaliatory action, standing alone, can sometimes raise an inference of causation; however, both the Supreme Court and the D.C. Circuit have cautioned that such proximity must be 'very close'" *Fragola*, 2022 WL 1908824, at *8 (internal quotations and citations omitted). *accord Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012). In *Hamilton*, the D.C. Circuit noted that "the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Fragola*, 2022 WL 1908824, at *8, (citing *Hamilton*, 666 F.3d at 1357-58).

Here, Plaintiff has not plausibly alleged facts that any of the purported adverse actions were taken because of prior protected activity. Plaintiff alleges that after she complained on numerous occasions about discrimination and harassment to the Director of Administration, the Internal Ombudsman, the Office of Complex Financial Institutions Deputy and Associate Deputy, and Union Representative she was (i) subjected to a non-selection, denied job benefits,(ii) demoted, (iii) suspended, issued reprimands and negative evaluations, and (iv) discharged or constructively terminated. *See* Pl.'s Opp. at 8-11; *see also* Am. Compl. at 15-20. Plaintiff's Amended Complaint and Opposition, however, do not suggest that those involved with the various alleged adverse or disciplinary actions, such as Ms. Luk (Plaintiff's supervisor and purportedly primary decision-maker), were aware of her informal EEO activities, *see generally* Am. Compl., and these failures sink Plaintiff's retaliation claims. *See Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009) (requiring knowledge of protected activity as a prerequisite of a retaliation claim); *Culton v. Mo. Dep't of Corrs.*, 515 F. 3d 828, 831 (8th Cir. 2008) (citing *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998) ("stating that a causal link between statutorily protected activity and an

adverse employment action does not exist if the employer is not aware of the employee's statutorily protected activity" (internal citation and quotation omitted)); *Dudley v. WMATA*, 924 F Supp. 2d 141, 182 (D.D.C. 2013) (observing that "[i]t is hard to argue that the employer punished plaintiff because of plaintiff's protected activity, if the employer was completely unaware of plaintiff's protected activity") (citation omitted).

Further, in addition to the lack of knowledge of her protected activity, the Court should find that there is lack of temporal proximity between Plaintiff's last formal EEO activity on March 30, 2015, and her purported constructive discharge on September 16, 2015, and the iniation of the Office of Inspector General investigation into her theft of confidential information on or about September 19, 2015.  More than five  months elapsed between Plaintiff's alleged protected activity in March 2015 and the constructive discharge and investigation in September 2015. Under the law, this temporal gap is too wide to support a retaliation claim.  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam) (citing with approval circuit cases finding three and four months to be too temporally remote to establish causation); *see also Moore v. Castro*, 192 F. Supp. 3d 18, 44 (D.D.C. 2016) (determining an action which occurs more than three months after the protected activity is not likely to qualify for such a causal inference), *aff'd sub nom. Moore v. Carson*, 775 F. App'x 2 (D.C. Cir. 2019); *Jones v. Castro*, 168 F. Supp. 3d 169, 185 (D.D.C. 2016) (deciding no inference of causation is possible where it was more than three months between his final protected activity and the adverse action—and almost a year between Plaintiff's initial protected activity and the adverse action); *Williams v. Spencer*, 883 F. Supp. 2d 165, 178 (D.D.C. 2012) (the Court determining that the gap of five months or more between plaintiff's disclosures and her termination undermines any causal inference).  Accordingly, although "temporal proximity

can . . . support an inference of causation," that inference applies only "where the two events are very close in time," *Hamilton*, 666 F.3d at 1357, this is not the case here.

Furthermore, an investigation into Plaintiff's alleged theft of confidential information is not a materially adverse action to support a retaliation claim. *See Ross v. Georgetown Univ.*, No. 18-671 (ABJ), 2019 WL 2452326, *7 (D.D.C. June 12, 2019) (noting that "an investigation into an employee's conduct, without more, is not an adverse employment action that will support a Title VII retaliation or discrimination claim.").

In sum, Plaintiff fails to establish a nexus between her protected activity and the purported adverse actions and thus, Plaintiff's retaliation claims are subject to dismissal.

**V.    Plaintiff Fails to Sufficiently Plead Facts to Establish a Hostile Work Environment Claim.**

As Defendant explained, Plaintiff falls far short of pleading sufficient facts to demonstrate a hostile work environment.  *See* Def.'s Mot. 16-21.  To do so, Plaintiff needed to provide facts, beyond the threadbare assertions she offers, that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" and that this behavior is "sufficiently severe or pervasive [as] to alter the conditions of [her] employment and create an abusive working environment."  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted).  Plaintiff failed to do so in her Amended Complaint or Opposition, and her reliance on *Scott v. Dist. Hosp. Partners, LP.*, 60 F. Supp. 3d 156 (D.D.C. 2014) is misplaced. *See* Pl.'s Opp'n at 11-12. In *Scott*, the Court determined that the plaintiff plead sufficient facts to support a hostile work environment claim because the plaintiff alleged that her immediate supervisor treated non-white employees more favorably and that the supervisor discriminatorily revoked the plaintiff's overtime privileges and repeatedly upbraided the plaintiff and subjected the plaintiff to "tirade[s] of abusive and degrading comments[.]"  *Scott*, 60 F. Supp. 3d at 165.  Unlike the plaintiff in *Scott*, Plaintiff's claims are

neither severe nor pervasive, none of the comments or allegations show any connection to Plaintiff's protected status (i.e., her disabilities) or expressly focus on her disabilities and thus her allegations fail to demonstrate a hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("isolated incidents (unless extremely serious) will not amount to" a hostile work environment); *Brooks v. Grundmann,* 748 F.3d 1273, 1277-78 (D.C. Cir. 2014) ("the ordinary tribulations of the workplace, [*i.e.,*] a series of petty insults, vindictive behavior, and angry recriminations . . . are not actionable under Title VII"); *id.* at 1277 ("isolated expression of frustration" where employee "yelled," "violently threw a book" and "slamm[ed] down his hand" did not support a hostile-work-environment claim); *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment.  Even a few isolated incidents of offensive conduct do not amount to actionable harassment.").  The allegations pled in the Amended Complaint fail to sufficiently show a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult," *Harris*, 510 U.S. at 21.

Also, as Defendant demonstrated, Plaintiff's constructive discharge claim also fails as a matter of law.  Def.'s Mot. at 20.  "[T]o establish constructive discharge, the plaintiff must make a further showing beyond that needed to establish a hostile work environment." *Garza v. Blinken*, Civ. A. No. 21-02770 (APM), 2023 WL 2239352, at *6 (D.D.C. Feb. 27, 2023) (citing *Carter v. Nelson*, No. 20-5111, 2021 WL 6139250, at *2 (D.C. Cir. Dec. 27, 2021); *Green v. Brennan*, 578 U.S. 547, 559 (2016) ("[A] hostile-work-environment claim is a 'lesser included component' of the '*graver* claim of hostile-environment constructive discharge.'") (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 149 (2004)). Because pleading constructive discharge requires more than a hostile work environment, Plaintiff's constructive discharge claim fails, as well.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in Defendant's Motion, the Court should grant Defendant's Motion and dismiss Plaintiff's Amended Complaint.


Dated: December 20, 2023                    Respectfully submitted,

                                            MATTHEW M. GRAVES, D.C. Bar # 481052
                                            United States Attorney

                                            BRIAN P. HUDAK
                                            Chief, Civil Division

                                            */s/ Stephanie R. Johnson*
                                            STEPHANIE R. JOHNSON
                                            D.C. Bar # 1632338
                                            Assistant United States Attorney
                                            601 D Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 252-7874
                                            Stephanie.Johnson5@usdoj.gov

                                            *Attorneys for the United States of America*

13

### CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing to be sent by email and first-class

U.S, mailto Plaintiff Allison Kathleen Aytes at the following address:

ALLISON KATHLEEN AYTES
3313 West Houston Place
Broken Arrow, OK 74012

And

ALLISON KATHLEEN AYTES
218 Barbee Ct
Marina, CA 93933
allison.aytes@gmail.com


*/s/ Stephanie R. Johnson*
STEPHANIE R. JOHNSON
Assistant United States Attorney


Dated: December 20, 2023