UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLISON KATHLEEN AYTES,<br><br>*Plaintiff*,<br><br>v.<br><br>MARTIN J. GRUENBERG, Chairman,<br>Federal Deposit Insurance Corporation,<br><br>*Defendant*. | Civil Action No. 1:23-cv-00911 (CJN) |

**ORDER**

Allison Aytes brings this Rehabilitation Act suit against the Chairman of the Federal Deposit Insurance Corporation, her former employer, for allegedly engaging in various forms of disability-related discrimination. ECF No. 15 ("Compl.").[1] The government moves to dismiss. ECF No. 29 ("Mot."). The Court grants the motion but will permit Aytes to file an amended complaint in light of her *pro se* status.

**I.   Background**

Aytes was an FDIC employee from 2010 to 2015. Compl. at 4. During that time, she allegedly suffered from six disabilities: systemic lupus erythematosus, chronic migraines, type 2 diabetes, hypothyroidism, fibromyalgia, and gastric ulcers. *Id*. at 5–6. Aytes alleges that her managers refused to reasonably accommodate her disabilities, retaliated against her for

---

[1] Although Aytes mentions the Americans with Disabilities Act in her Complaint, *see* Compl. at 3, a federal employee must bring disability discrimination claims through the Rehabilitation Act, not the ADA. *Rogers v. Smithsonian Inst.*, 305 F. Supp. 3d 89, 96 (D.D.C. 2018); *Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 60 (D.D.C. 2012). Plaintiff confirms in her opposition that she intends only to bring Rehabilitation Act claims. *See* ECF No. 31 ("Opp.") at 3–4.

1

complaining about the way that they treated her, and subjected her to a hostile work environment. *Id*. at 10–26.

Aytes first contacted an Equal Employment Opportunity (EEO) counselor on December 22, 2014; filed a formal EEO complaint on March 30, 2015; and supplemented her formal complaint on July 28, 2015, and again August 6, 2015. Mot. Ex A at 3 n.3 (informal complaint); Mot. Ex. B at 1–13 (formal complaint), 14–28 (supplements). She then resigned from the agency on September 16, 2015. Compl. at 4.

After the FDIC and EEOC rejected her claims, Aytes filed this suit on March 3, 2021, in the U.S. District Court for the Northern District of Oklahoma. ECF No. 1 at 1. In 2023, that Court granted the government's motion to transfer the case here. ECF No. 23. The government now moves to dismiss for failure to exhaust and failure to state a claim.

## II. Analysis

### A. Exhaustion

The government raises two arguments concerning exhaustion.[2]

*First*, the government argues that Aytes has failed to exhaust her administrative remedies with respect to any discriminatory act that occurred before November 7, 2014. Mot. at 6–9. Under the relevant regulations, a federal employee complaining of discrimination must contact an EEO counselor within 45 days of any act alleged to be discriminatory. *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015); 29 C.F.R. § 1614.105(a)(1). Aytes first contacted an EEO counselor on

---

[2] The government initially raised a third argument that Aytes failed to exhaust because she did not timely file her suit within 90 days after receiving her right-to-sue letter. Mot. at 10; *Morrison v. Nielsen*, 325 F. Supp. 3d 62, 65 (D.D.C. 2018) (citing 42 U.S.C. § 2000e-16(c)); *see also* 29 C.F.R. § 1614.407. But it withdrew that argument after Aytes clarified, following an inquiry from the Court, the date that she received her right-to-sue letter. ECF No. 37; ECF No. 38.

December 22, 2014, Mot. Ex A at 3 n.3, and 45 days before that is November 7, 2014, so she cannot now pursue claims for allegedly discriminatory acts occurring before that date.

Aytes does not dispute this analysis. Opp. at 4–5. She instead points to 29 C.F.R. § 1614.105(a)(2), which states that an agency "shall extend the 45-day time limit . . . when the [complainant] shows that he or she was not notified of the time limits and was not otherwise aware of them." *See also Harris v. Gonzales*, 488 F.3d 442, 444 (D.C. Cir. 2007) (explaining § 1614.105(a)(2)'s requirements).[3] But Aytes does not include any allegations in her complaint about her lack of knowledge of the 45-day time period, and the regulation puts the burden on her to make that "show[ing]." 29 C.F.R. § 1614.105(a)(2); *cf. Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (explaining that even though defendants have the burden to prove the affirmative defense of exhaustion, plaintiffs have the burden to prove excuses to exhaustion like equitable tolling).

*Second*, the government argues that Aytes failed to exhaust her administrative remedies with respect to her constructive-discharge theory because she never raised that claim during administrative proceedings. Mot. at 9. Indeed, Aytes last supplemented her EEO complaint over a month before she alleges that she was constructively discharged from the agency. *See* Mot Ex. B at 4, 18; Compl. at 4. Aytes responds that she "effectively" raised this claim by pointing to a long list of allegations about harassment that she used to support her hostile work environment claim. Opp. at 5 (citing Mot. Ex. B at 4–9). Specifically, her EEO complaint alleged that "Ms. Aytes

---

[3] Although the government characterizes Aytes's argument as one premised on equitable tolling, *see* ECF No. 35 ("Reply") at 4–5, that is not quite right. A request for a § 1614.105(a)(2) extension is distinct from equitable tolling, and "[a]n employee who makes [the regulatory] showing need not separately satisfy the common law standard for equitable tolling." *Harris*, 488 F.3d at 444.

became aware from several colleagues [that her supervisors] is 'trying to fire' Ms. Aytes, and 'the harassment is going to continue until termination.'"  Mot. Ex. B at 7.

But this vague allegation referenced her supervisor's alleged hostility only in the context of a harassment claim, and was made approximately six months before she (allegedly) was forced to leave the agency—the actual discriminatory act at issue.  It therefore did not "give the charged party notice of the claim and narrow the issues for prompt adjudication and decision."  *Sandler v. Blinken*, No. 21-CV-2226 (DLF), 2022 WL 4547557, at *7 (D.D.C. Sept. 29, 2022) (internal alterations omitted).  Indeed, it appears that Aytes is simply attempting to "piggy-back [a] termination claim[] that [is] the culmination of [her] properly exhausted hostile work environment or discrimination claims."  *Id*. at *6 (internal quotation marks omitted); *see also* Opp. at 10 ("Plaintiff clearly alleged that [her constructive termination] was not merely a discrete instance of a retaliatory act, but rather the culmination of 'a long train of abuses.'") (quoting U.S. Decl. of Indep. (1776)).  That is not enough, *see, e.g.*, *Sandler*, 2022 WL 4547557, at *6; *Terveer v. Billington*, 34 F. Supp. 3d 100, 113 (D.D.C. 2014) (collecting cases), and accordingly the Court will dismiss Aytes's constructive termination claim for lack of jurisdiction.  *See Sandler*, 2022 WL 4547557, at *5 (explaining that the Court of Appeals treats a complainant's complete failure to raise a claim during administrative processes as a jurisdictional defect).

### B. The Merits

Aytes asserts three claims for disability-related discrimination.

*First*, Aytes alleges that the FDIC failed to accommodate her disabilities by revoking a telework agreement that permitted her to work remotely one day a week and then failing to reinstate it.  *See* Compl. at 7–13; Mot. Ex. D at 2.  "To state a claim for a violation of the Rehabilitation Act's reasonable accommodation requirements, a plaintiff must allege that (i) she

4

was disabled within the meaning of the Rehabilitation Act; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Menoken v. Dhillon*, 975 F.3d 1, 7 (D.C. Cir. 2020) (internal quotation marks omitted). The revocation of the teleworking agreement cannot itself be an actionable denial because it occurred on December 10, 2013, Compl. at 8, and, as discussed, Aytes must plausibly allege that the FDIC engaged in a discriminatory action after November 7, 2014. *Supra* 2–3. And as for Aytes's other teleworking requests (assuming they qualify as requests for a reasonable accommodation), she does not allege the FDIC denied any such request after that date. Instead, her post-November 7, 2014 allegations pertaining to teleworking concern only her requests for documentation to support the agency's initial decision to revoke her teleworking permissions, Compl. at 11, the agency's requests for her to provide medical records substantiating the disability and its concerns about whether and how she had provided them, *id*. at 12, and a July 2015 decision by an unnamed agency employee that Aytes "was entitled to request a medical telework accommodation," *id*. at 13.[4]

None of these allegations describes a *denial* of a request for a reasonable accommodation. In particular, with respect to the agency's requests for additional substantiation of her disability, Aytes never alleges that the agency denied her teleworking request. An employer's request for substantiation of a disability and back-and-forth with a requester does not qualify as a denial standing alone. *Cf. Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1308–09 (D.C. Cir. 2010); *see also* Ward v. McDonald, 762 F.3d 24, 31–32 (D.C. Cir. 2014) ("[W]hen the need for an

---

[4] The same paragraph contains an allegation that a union grievance that Aytes filed was denied, Compl. at 13, but she does not specify who denied her grievance or when it was made.

5

accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation.").

*Second*, Aytes brings a retaliation claim. Compl. at 14–20. To state such a claim, Aytes must plausibly allege that "(i) she engaged in statutorily protected activity; (ii) she suffered a materially adverse action by her employer; and (iii) a causal link connects the two." *Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014) (internal alterations and quotation marks omitted). The government contests only the last element, arguing that Aytes has not adequately alleged causation because she pleaded "nothing more than borderline temporal proximity" between her complaints of discrimination and the agency's allegedly adverse employment actions. Mot. at 14–16. While "temporal proximity [alone] can indeed support an inference of causation," it can do so "only where the two events are very close in time." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (internal alteration omitted); *see also Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003). How close is close enough depends on the facts of the case, although the Supreme Court has suggested that three months is too long. *Hamilton*, 666 F.3d at 1357–58.

Here, Aytes identifies several employment actions that she claims were retaliatory and that occurred after November 7, 2014. *See* Compl. at 17–20. She also alleges that she engaged in protected activities during this period by complaining to agency personnel, filing an EEOC complaint, and helping another employee file a discrimination complaint. Compl. at 15–16. But many of her allegations do not specify exactly when she engaged in the allegedly protected activity. *See, e.g.*, Compl. at 15 (alleging that Aytes complained "to Human Resources personnel on multiple occasions from April 2014 to 2015"). That means that her complaint fails to adequately allege the kind of close temporal proximity that could plausibly show retaliation.

6

*Third*, Aytes brings a hostile work environment claim. Compl. at 21–26. The government argues that Aytes has not plausibly alleged that the harassment she experienced was tied to her disabilities or her allegedly protected activities. Mot. at 18–20. The Court previously warned Aytes in a *Fox* order that, if she "fail[ed] to respond to the arguments raised by Defendant in his Motion," the Court "w[ould] treat Defendant's Motion as conceded." ECF No. 30 at 2. Yet Aytes did not address this argument. *See* Opp. at 11–12. Accordingly, the Court will treat this argument as conceded, *see Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004), and dismiss this claim.

### III. Conclusion

Aytes's current complaint fails to state a claim. But it is possible that she could state a claim if she addresses some of the defects identified above. Accordingly, in light of Aytes's *pro se* status, the Court will grant her leave to amend her complaint.

Accordingly, it is hereby

**ORDERED** that the government's Motion to Dismiss, ECF No. 29, is **GRANTED**; and it is further

**ORDERED** that Aytes's constructive termination claim is **DISMISSED** for lack of subject matter jurisdiction; and it is further

**ORDERED** that Aytes's other claims are **DISMISSED** for failure to state a claim; and it is further

**ORDERED** that Aytes may file an amended complaint on or before October 28, 2024.

DATE: September 26, 2024

CARL J. NICHOLS
United States District Judge